UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11793-GAO

JENNIFER TIAN,
Plaintiff,

v.

ASPEN TECHNOLOGY, INC.,
Defendant.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 30, 2014

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and Recommendation recommending that the plaintiff's motion for summary judgment be denied and that the defendant's cross-motion for summary judgment be granted. The plaintiff filed an objection to which the defendant replied. After review of the relevant pleadings and submissions, I concur with the magistrate judge's analysis and proposed ruling, and therefore ADOPT the Report and Recommendation.[1]

The plaintiff's motion for summary judgment (dkt. no. 47) is DENIED. The defendant's cross-motion for summary judgment (dkt. no. 48) is GRANTED. Judgment shall enter for the defendant.

Following the Report and Recommendation, the plaintiff moved for leave to file an amended complaint (dkt. no. 74). After review of the proposed amended complaint in light of the Report's extended discussion and evaluation of the record evidence, the motion for leave to amend is DENIED as futile.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[1] I do not adopt the magistrate judge's conclusion that an argument raised by the defendant in a footnote should necessarily be deemed waived, but that finding is not material to the resolution of the motions.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER TIAN,                          )
                                        )
                Plaintiff,              )
        v.                              )        CIVIL ACTION
                                        )        NO. 12-11793-GAO
ASPEN TECHNOLOGY, INC.,                 )
                                        )
                Defendant.              )


## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

August 18, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Jennifer Tian ("Tian") was formerly employed as a Senior Tax Analyst

for the defendant, Aspen Technology, Inc. ("Aspen").   On October 1, 2012, Tian filed

this action pro se, alleging that Aspen discriminated against her and terminated her

employment on the basis of her race, age and gender, and that it retaliated against her for

complaining about the alleged discriminatory treatment.   By her complaint, Tian has

asserted claims against Aspen for Racial, Gender and Age Discrimination (Count I),

Intentional Tort (Count II), Unlawful Retaliation (Count III), and Intentional Infliction of

Emotional Distress (Count IV).   The defendant denies that it discriminated against Tian

or otherwise acted improperly, and it contends that she was terminated due to her poor

work performance and failure to meet the requirements of a formal performance improvement plan. Tian takes strong exception to the criticism of her work.

The matter is before the court on the "Plaintiff's Motion For Summary Judgment" (Docket No. 47), as well as on the "Defendant's Motion for Summary Judgment" (Docket No. 48). By their motions, each of the parties contends that there are no disputed issues of fact, and that it is entitled to judgment as a matter of law with respect to all counts of the complaint.[1] For all the reasons detailed below, this court finds that Tian has failed to present sufficient facts to warrant summary judgment in her favor or to create a trial-worthy issue with respect to any of her claims. Accordingly, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion for summary judgment be DENIED, and that the defendant's motion for summary judgment be ALLOWED.

## II.  STATEMENT OF FACTS

### Scope of the Record

In connection with its opposition to Tian's motion for summary judgment, Aspen argues that the court should disregard the plaintiff's evidentiary submissions, and deny her motion on procedural grounds, because she has failed to comply with the require-

---

[1] In her motion for summary judgment, Tian attempts to assert an "Additional New Claim," entitled "Civil Conspiracy," by which she alleges that employees in Aspen's Human Resources Department participated in a conspiracy with employees in the Tax Department to discharge Tian from employment and replace her with someone else. (See Pl. Mem. (Docket No. 47) at 20-24). Because Tian never sought to amend her complaint to add such a claim, it is not a part of her case and will not be addressed further.

ments of Fed. R. Civ. P. 56(c)(1) and Local Rule 56.1. Rule 56(c)(1) provides in relevant part as follows:

> A party asserting that a fact cannot be ... disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials ....

Pursuant to Local Rule 56.1, motions for summary judgment must

> include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motions.

Although Tian submitted a Statement of Undisputed Facts ("Statement") containing citations to various exhibits, Aspen contends that the Statement was untimely because it was not filed until after the defendant had opposed Tian's motion for summary judgment and objected to the absence of a statement pursuant to Local Rule 56.1. (Def. Resp. to Pl. Statement of Undisputed Facts (Docket No. 65) at 1). It further argues that the plaintiff's Statement remains inadequate because it "still fails to properly direct the Court to 'particular parts of materials' in the summary judgment record supporting Plaintiff's Motion for Summary Judgment, as required by Fed. R. Civ. P. 56(c)(1)." (Id.). This court finds that it is appropriate to consider Tian's Statement to the extent the factual assertions contained therein are undisputed or are supported by citations to evidence that can be identified in the record.

There is no dispute that Aspen has had an adequate opportunity to review and respond to the substance of Tian's Statement notwithstanding the plaintiff's failure to submit it at the time she filed her motion for summary judgment. Moreover, while the citations set forth in Tian's Statement are difficult to follow due to the volume of documents included in each of the plaintiff's exhibits, and the lack of an organized numbering system, Tian's effort to highlight critical portions of the exhibits makes it possible to identify most of the relevant documents. Given these circumstances, this court finds that it is preferable to evaluate Tian's motion for summary judgment on the merits, and to consider any facts contained in her Statement that are undisputed or are accompanied by citations that are sufficient to identify the supporting evidence. To the extent the plaintiff's Statement contains disputed allegations that are not supported by adequate citations to the record or merely reflect the plaintiff's legal arguments, this court has not credited them as undisputed facts.

Aspen also objects to the admissibility of Tian's exhibits on the grounds that they have not been properly authenticated. (Def. Opp. Mem. (Docket No. 55) at 4). This court declines to disregard those exhibits or to recommend that the plaintiff's motion be denied on this basis. As an initial matter, the plaintiff has shown that many of the relevant documents included within her exhibits were produced by Aspen during the course of the litigation. (See Affidavit of Plaintiff ("Pl. Aff.") (Docket No. 62) ¶ 7). Those documents appear to have been generated or kept by the defendant in the ordinary course of its business, and the defendant does not purport to argue that its own documents

are not authentic. (See, e.g., Pl. Exs. B-C (Docket No. 47)). Furthermore, Tian has submitted an Affidavit in which she avers that the materials cited in her pleadings, including her exhibits, "are true and accurate copies." (Pl. Aff. ¶ 7). This court's review of the relevant documents reveals nothing to suggest otherwise. Therefore, this court will consider the exhibits that have been submitted by the plaintiff. The Statement of Facts set forth herein represents this court's careful scrutiny of the parties' factual statements, as well as the underlying evidence submitted in support of their motions for summary judgment, and this court's effort to provide a fair description of the relevant material facts that are, and are not, genuinely in dispute.[2]

## The Parties

Defendant Aspen is a publicly-traded company that is currently headquartered in Burlington, Massachusetts. (PF ¶ 3; DF ¶ 1). It is engaged in the business of software development and sales, and is the leading provider of software and support services for process engineering, primarily in the chemical industry. (Id.). Aspen's products are sold

---

[2] Unless otherwise indicated, the facts set forth herein are derived from the following materials: (1) Exhibits A through O to the Plaintiff's Motion for Summary Judgment ("Pl. Ex. _") (Docket No. 47); (2) the Defendant's Local Rule 56.1 Statement of Facts Over Which There is No Genuine Issue to be Tried ("DF") (Docket No. 50); (3) the Affidavit of Andrew C. Pickett ("Pickett Aff.") (Docket No. 51); (4) the Affidavit of Nina Radzim ("Radzim Aff.") (Docket No. 52); (5) the Affidavit of Michael Fitzula ("Fitzula Aff.") (Docket No. 53); (6) Exhibit A attached to the Plaintiff's Memorandum in Opposition to Defendant Aspen Technology, Inc.'s Motion for Summary Judgment ("Pl. Supp. Ex. A") (Docket No. 56); (7) the Plaintiff's Statement of Material Issues and Objections to Defendant Aspen Technology, Inc.'s Local Rule 56.1 Statement of Facts of No Genuine Issue ("PR") (Docket No. 57); (8) the Plaintiff's Statement of Undisputed Facts ("PF") (Docket No. 61); (9) the Affidavit of Plaintiff ("Pl. Aff.") (Docket No. 62); and (10) the Defendant's Response to Plaintiff's Statement of Undisputed Facts ("DR") (Docket No. 65).

worldwide, and the company generates gross revenues of approximately $400 million per year. (PF ¶ 3).

The plaintiff, Tian, is an Asian female who was 50 years old at the time of her termination from Aspen. (Id. ¶ 1). She holds two masters degrees from Suffolk University, and has had over 18 years of experience working in the financial sector in the United States. (Id. ¶ 5). Tian initially began working for Aspen as a Senior Tax Analyst in July 2006, but she resigned in November 2008 due to difficulties with her commute. (Id. ¶ 4). In about August 2010, Aspen rehired Tian as a Senior Tax Analyst after the company where she had been working in Boston relocated its tax function to Chicago. (Id.). She continued to work for the defendant in that capacity until she was discharged on January 5, 2012. (Id.; DF ¶ 2). Tian's claims in this action arise out of her employment with Aspen during the time period from August 2010 to January 5, 2012.

### Tian's Initial Employment with Aspen

During her initial period of employment at Aspen beginning in 2006, Don Walker served as the company's Vice President of Tax. (PF ¶ 11; DR ¶ 11). However, Tian's immediate supervisor was Darren Zysk, who was then Aspen's Director of Tax Compliance. (DF ¶ 4). In February 2008, Aspen's stock was delisted from NASDAQ as a result of the company's failure to meet certain financial transparency guidelines. (DF ¶ 5; PR ¶ 5). This led to a period of corporate restructuring and changes in leadership. (DF ¶ 5). It also required Aspen to restate certain of its prior financial statements, and to amend its earlier tax filings. (DF ¶ 5; PR ¶ 5; Pickett Aff., Ex. A at 64). Due to the discovery of

various financial irregularities and issues with tax returns that had been approved by Darren Zysk, Aspen terminated Mr. Zysk from employment. (Radzim Aff. ¶ 4). However, both Mr. Walker and the plaintiff were able to retain their positions, and Tian assisted the company in amending its prior tax returns. (See PF ¶ 11; DR ¶ 11; Pickett Aff., Ex. A at 64).

Tian voluntarily resigned from her position at Aspen on or about November 22, 2008. (DF ¶ 6). According to the plaintiff, her resignation was prompted by the fact that she had been in two car accidents driving to work, and felt she could no longer tolerate the commute. (Pickett Aff., Ex. A at 72-73). She does not claim that she was pressured to resign or that she experienced any discrimination or unfair treatment during her initial period of employment at Aspen.

After Tian left the company, the Finance Department adopted new accounting and tax policies. (PF ¶ 9). It also underwent significant changes in its management structure. (Id.). Thus, although Mr. Walker remained the Vice President of Tax at Aspen, by 2010 Michael Fitzula, a white male, had become the company's Director of Tax. (See id. ¶¶ 11, 13; DR ¶¶ 11, 13; Fitzula Aff. ¶ 1). Additionally, Chris Fingliss, another white male, became Aspen's Manager of International Tax, and Colleen Cody, a white female, was employed as a Senior Manager of Tax until she was laid off in January 2011. (See PF ¶¶ 14-15; DR ¶¶ 14-15; Pl. Ex. A at 85).

**Aspen's Decision to Rehire Tian as a Senior Tax Analyst**

-7-

In August 2010, the company at which Tian was working centralized its tax function in Chicago, and the plaintiff applied for the position of Senior Tax Analyst at Aspen. (PF ¶ 4; DF ¶ 9). Mr. Fitzula, Aspen's Director of Tax, selected Tian as one of twenty individuals who were interviewed for that position. (DF ¶¶ 10, 12; PR ¶ 10, 12). The other applicants who were selected to interview included white and other non-Asian individuals. (DF ¶ 12). They also included males and various individuals who appeared to be under 40 years of age. (Id.).

During the hiring process, Tian was interviewed by five different Aspen employees. (PF ¶ 19). They included Mr. Fitzula, Mr. Fingliss and Mr. Walker, as well as Aspen's Chief Financial Officer, Mark Sullivan, and a representative from Human Resources, Sylvia Masci. (DF ¶ 10; PR ¶ 10). In addition, Aspen requested that Tian provide it with additional references, even though she had already submitted more than nine references to the defendant. (Pl. Ex. A at 4). The plaintiff notes that Aspen's Hiring Guide called for only three interviews of applicants applying for senior positions, and she suggests that she was subjected to greater scrutiny during the hiring process than three younger males who were rehired into the defendant's Financial Department during the time period from 2008 to 2010. (See PR ¶ 10; Pl. Ex. A at 1, 7). However, she has not cited to any specific evidence showing that any of the male applicants experienced a less rigorous process or were otherwise treated more favorably than the plaintiff. (See id.; DR ¶ 20).

According to Mr. Fitzula, it was apparent during the interview process that Tian was a woman of Asian descent. (Fitzula Aff. ¶ 3). He also believed, based upon Tian's appearance and information from her previous period of employment at Aspen, that Tian was over the age of 40.[3] (Id.). The plaintiff disputes that Mr. Fitzula could have known her age, which was 49 at the time of the interview. (PR ¶ 11; see also Pl. Mem. (Docket No. 47) at 24). Instead, she argues that her age was unknown at the time of her hiring, and that it was not until the company learned that she was over 40 that it took adverse employment actions against her. (See id., Pl. Ex. A at 20). This distinction is not material, however, since it is undisputed that Aspen knew she was over 40 at the time her employment was terminated.

There is no dispute that following the interview process, Tian was offered the position of Senior Tax Analyst. (DF ¶¶ 13, 17; PR ¶ 17). She also was offered a salary in the top range for someone in her position at Aspen. (See DF ¶ 17; PR ¶ 17; Radzim Aff. ¶ 7). While Tian complains that the salary was over $3,000 less than the amount she had been making in her prior job at Veolia Energy, Inc., she does not dispute that the amount was consistent with the pay of a Senior Tax Analyst at Aspen or that she accepted

---

[3] Under both the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA") and Mass. Gen. Laws ch. 151B, it is unlawful for an employer to carry out an adverse employment action against an employee who is forty years old or above, based on that employee's age. See Woodward v. Emulex Corp., 714 F.3d 632, 637-38 (1st Cir. 2013) (in order to state a prima facie case of age discrimination under Massachusetts law, plaintiff must show, among other things, that he was "over forty years old" and he was terminated from employment); Melendez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010) ("The ADEA makes it unlawful for an employer to take an adverse employment action against an employee who is forty years of age or older on the basis of his age").

the offer without limitation. (See PR ¶ 17). The decision to rehire the plaintiff was made by Mr. Fitzula and supported by Mr. Walker and members of the Human Resources Department. (DF ¶ 18; see also PR ¶ 18; Pl. Ex. C at 76). According to Mr. Fitzula, he based his decision on Tian's experience, as indicated on her resume, and on his expectation that Tian would require little supervision and be able to "hit the ground running." (Fitzula Aff. ¶ 5). Of particular significance was the plaintiff's experience "[p]reparing annual and quarterly tax provisions for [Aspen's] US headquarter and reviewing tax provisions for worldwide (26 countries) subsidiaries in accordance with FAS 109, FIN 18, foreign tax law and tax treaties[,]" and her experience "[a]ssisting in . . . FIN 48 analysis." (See DF ¶¶ 13-15; PR ¶¶ 13-15; Pickett Aff., Ex. C).

Throughout the second period of the plaintiff's employment at Aspen, which began on August 16, 2010, Tian worked as an at-will employee under the supervision of Mr. Fitzula. (DF ¶¶ 19-20). Mr. Fitzula in turn reported to Mr. Walker. (See PF ¶ 13; DR ¶ 13). Mr. Walker resigned from the company in the summer of 2011, after which Mr. Fitzula began reporting to Mike Smith, a white male who replaced Mr. Walker as Aspen's Vice President of Tax. (See PF ¶¶ 11-13; DR ¶¶ 11-13).

In total, six individuals worked in Aspen's Tax Department at any given time during the time period between 2010 and 2012. (Pickett Aff., Ex. A at 115). In addition to Tian, Mr. Fitzula, and Mr. Fitzula's boss, those individuals included Chris Fingliss, Doreen Menard, and Colleen Cody. (See PF ¶¶ 14-15; DR ¶¶ 14-15; PR ¶ 37; Pickett Aff., Ex. A at 115-16). As mentioned previously, Ms. Cody, who was a white woman

over the age of 50, was laid off in January 2011. (PF ¶ 15; DR ¶ 15; DF ¶ 43). However, another woman, Roselinda Wood, began working in the Department prior to Tian's termination from the company. (See Pickett Aff., Ex. A at 115-16; PR ¶ 37). Accordingly, during Tian's second period of employment at Aspen, four different women held positions within the Tax Department. While Tian was the only Asian in the Tax Department, at the relevant time approximately 75 persons of Asian or South Asian descent were included in management and professional positions at Aspen's Burlington headquarters. (See DF ¶¶ 38, 42; PR ¶¶ 38, 42).

## Issues Regarding Tian's Work Performance

In September 2011, Tian received her first annual review since returning to Aspen in 2010. (DF ¶ 21; PR ¶ 21; see also Pl. Ex. A at 74-77). Tian's supervisor, Mr. Fitzula, was responsible for completing the plaintiff's written evaluation. (See DF ¶ 21; PR ¶ 21). With respect to the overall quality of Tian's work, Mr. Fitzula gave her a rating of "3," meaning that she consistently met expectations. (Id.; Pickett Aff. Ex. D). He also gave her a rating of "3" in eight out of nine specific areas of employee competencies. (Pickett Aff., Ex. D at 2-3). However, Mr. Fitzula gave the plaintiff a rating of "4" in the remaining area of "Job Knowledge." (Id. at 2). Accordingly, he determined that Tian had only partially met expectations with respect to her knowledge of specific technical, industry or subject matter issues required to perform her job effectively. (Id.). As Mr. Fitzula noted on Tian's annual review form:

While Jenn is comfortable with State taxes, she needs to improve her technical skills in other areas to assist with financial reporting and international taxation. Both of these areas represents [sic] key areas for a Senior Tax Associate at Aspen. When in [sic] dealing with state taxes she is very efficient and effective. However, when operating outside her comfort zone she has a tendency to slow down and not turn projects around as quickly. The provision is a time sensitive calculation and needs to be completed timely and accurate [sic].

We would like to see Jenn take a more active role in the provision. In the 1st quarter of 2012, Jenn will be tasked with the quarterly roll forwarded [sic] on FIN 48. This is a key component of the tax provision. The calculation needs to be completely [sic] in a timely and accurate manner. In the interim, Jenn should read up on FIN 48 and review the prior quarter calculations.

(Id. at 3). Mr. Fitzula did recognize, in his overall comments on Tian's performance, that the plaintiff had "significant potential and could be a key factor in assisting with the preparation of the provision and the returns which is an integral part of her job[,]" and he suggested that both Tian and management "work to ensure she realizes this potential." (Id.).

On September 30, 2011, Tian met with Mr. Fitzula and Mr. Smith to discuss her performance evaluation. (Pl. Supp. Ex. A at 2). During the meeting, Mr. Fitzula high-lighted gaps in her work, and reset the expectations for her performance going forward. (Id.). On that same date, Tian complained to Mr. Smith that she had been subjected to "unfair treatment" from Mr. Fitzula, and that Mr. Fitzula treated her differently than he treated Mr. Fingliss, with whom Mr. Fitzula had a friendly relationship. (Pickett Aff., Ex. A at 147-48, 168). The plaintiff did not use the word "discrimination" during her

discussion with Mr. Smith. (Id. at 147). Nor has Tian presented any facts to suggest that she accused Mr. Fitzula of treating her unfairly on the basis of her age, race or gender. Moreover, Tian acknowledged that she needed to improve her skills in the area of international tax. (DF ¶ 22). Thus, following her discussions with Mr. Fitzula and Mr. Smith, Tian sent an email to Mr. Fitzula in which she stated, "I agree with your evaluation which is a true statement. I'll continue to improve my weaknesses. I also appreciate your understanding of the cause of slow down for submitting some projects." (Id.; Pickett Aff., Ex. E). Despite these statements, as detailed below, Tian took strong exception to any criticism of her work and both during her employment with Aspen and in this litigation she has sought to counter, point by point, any negative comments about her work. Significantly, however, she has not pointed to any evidence (as opposed to conjecture) that the negative comments were based on discriminatory animus.

As Mr. Fitzula had promised in his written review of the plaintiff, Tian was assigned to "timely calculate FIN 48 for the 1st quarter of FY2012." (Pl. Ex. F at 14). In early October 2011, Tian submitted a FIN 48 report to Mr. Fitzula, and Mr. Fitzula advised her that the report contained numerous errors. (DF ¶ 24; PR ¶ 24). In an email to Mr. Fitzula dated October 7, 2011, Tian explained that it was her "1st time to prepare FIN 48 analysis and journal entries." (Pl. Ex. B at 2). She also explained that she lacked confidence in, and remained confused about, certain of the calculations. (Id.). As described below, Tian asserts that Mr. Fitzula did not provide her with the guidance, instructions or support necessary to properly prepare the financial reports. (See PF

¶ 26(A)). Therefore, according to the plaintiff, her inability to complete the FIN 48 project to Mr. Fitzula's satisfaction was due to the defendant's failure to provide her with the training and assistance necessary to perform the requirements of her job.

## Plaintiff's Performance Improvement Plan

On December 1, 2011, Aspen placed Tian on a formal Performance Improvement Plan ("PIP"). (DF ¶ 25; Pickett Aff., Ex. F). As set forth in a written description of the PIP, Mr. Fitzula determined that Tian was not meeting company standards in three areas of employee competencies, and he provided her with specific examples of gaps in her job performance. (Picket Aff., Ex. F at 1-2). In particular, Mr. Fitzula informed Tian that her FIN 48 calculation for the first quarter of fiscal year 2012 was incomplete and inaccurate, and he described a list of the specific errors that she had made in connection with that work. (Id. at 1). He also criticized Tian's failure to complete an assignment to roll forward various income tax payable accounts, and her failure to complete a project that required her to pull various documents from the file room. (Id. at 1-2). Mr. Fitzula further explained that effective immediately, he was placing Tian on an improvement action plan that would remain in place through December 31, 2011. (Id. at 2). The plan called for Tian to complete a number of specified tasks, and to "[c]onsistently deliver accurate and reliable work products[.]" (Id. at 2). Mr. Fitzula stated that he would be monitoring Tian's performance under the PIP, and he warned her that any "[f]ailure to a) fully meet the expectations outlined in the Performance Improvement Action Plan and/or b) demonstrate the AspenTech competencies with immediate improvement in the noted

gaps will lead to further corrective action up to and including termination of employment with Aspen Technology." (Id. at 3). It is undisputed that Tian was ultimately terminated after Mr. Fitzula determined that she had failed to satisfy the requirements of the PIP and to make the necessary improvements.

The plaintiff expressed her disagreement with the statements set forth in the PIP, but she agreed to sign it and to "work to complete the plan." (Id.). Mr. Fitzula and Nina Radzim, the Human Resources Manager for Aspen's facility in Burlington, also signed the PIP. (Id.). Ms. Radzim is a woman of South Asian descent. (Radzim Aff. ¶ 2). She also serves as Aspen's Equal Employment Opportunity Coordinator in charge of monitoring Aspen's Affirmative Action Plan, which aims to insure compliance with the company's equal employment policy. (Pl. Ex. F at 1).

Subsequently, Tian submitted a detailed, written reply to the PIP in which she expressed her disagreement with each of the criticisms described by Mr. Fitzula. (DF ¶ 26). Mr. Fitzula, with some assistance from Ms. Radzim, then prepared a written rebuttal to the plaintiff's comments. (See id.; Pl. Ex. F at 26-27). Finally, Tian prepared a response to Mr. Fitzula's rebuttal. (DF ¶ 26). A document containing both parties' statements has been submitted as part of the record on summary judgment. (See Picket Aff., Ex. G).

The parties' comments regarding the PIP demonstrate that Tian and Mr. Fitzula had very different views regarding the scope of the work that Tian was expected to complete on her own in her capacity as a Senior Tax Analyst, and the quality of the tasks

-15-

that she had performed while working in that position. (See id.). They also reflect Tian's

view that Mr. Fitzula failed to give her support and that he treated her unfairly. For

instance, Tian complained that Mr. Fitzula failed to point out errors in her work that

would have enabled her to make corrections prior to the project deadlines. (See id. at

2-3). She also complained that Mr. Fitzula saved important documents in his personal

computer drive that could not be accessed by others, and that this hampered her ability to

properly complete her duties at Aspen. (Id. at 9). In addition, Tian insisted that Mr.

Fitzula withheld information that was needed to prepare necessary filings, and that he

repeatedly failed to respond to her specific requests for assistance. (See id.). Thus, as the

plaintiff stated in her comments to the PIP:

> When I asked questions, my manager always avoid [sic] giving
> answers and said he is very busy. During my time at Aspen I either
> receive [sic] no responses or was given general and unclear
> explanations later. His actions made me feel very uncomfortable at
> Aspen. On a number of occasions after work I would go home very
> upset and worried. I felt like I was being singled out and made to
> feel unwanted in the group and company by him.

(Id.). Significantly, however, Tian did not indicate in her comments to the PIP that Mr.

Fitzula's treatment of her had anything to do with her age, race or gender, and she did not

suggest that she viewed herself as a victim of unlawful discrimination.

On December 7, 2011, Tian met with Ms. Radzim for approximately two hours.

(Radzim Aff. ¶ 8). During the meeting, the plaintiff expressed her view that the PIP was

unfair. (Id.). She also told Ms. Radzim that Mr. Fitzula and Mr. Fingliss lacked the

computer and math skills necessary to understand Tian's use of complicated formulas in

her work product. (Id.). Tian has not presented any evidence indicating that she complained about discrimination during her meeting with Ms. Radzim. Moreover, the record shows that after the meeting, Tian sent Ms. Radzim an email in which she expressed embarrassment for having an "emotional conversation to discuss [her] 'Improvement Plan[,]'" and thanked Ms. Radzim for her "understanding of [the] situation, [her] caring attitude, good suggestions and encouragement." (Pickett Aff., Ex. H at 1). Again, however, she did not indicate that she felt she had been discriminated against, and did not accuse anyone at Aspen of treating her unfairly on the basis of her age, race or gender. (See id.).

The record indicates that during the time period between 2008 and 2012, fourteen employees who worked in Aspen's Financial Department in Burlington were placed on a formal PIP. (DF ¶ 50; PR ¶ 50). Of those fourteen employees, at least two were of Asian descent, three were female, and at least nine, or about 64% of them, were age 40 or older. (Pl. Ex. A at 14). However, neither party has described how many people worked in the Financial Department during that time period. Nor has either party described the age, gender or ethnic makeup of the employees who worked there. Therefore, it is not possible to determine what these numbers indicate about the success rate of Asians, women, and older employees working in Aspen's Financial Department or about Aspen's attitude toward such groups.

### The Termination of Tian's Employment

In mid-December 2011, Tian submitted work product to Mr. Fitzula that had been called for under the terms of the PIP. (Fitzula Aff. ¶ 10). According to Mr. Fitzula, the work contained numerous errors. (Id.). For example, but without limitation, Mr. Fitzula believed that a consistent problem involved the plaintiff's use of complicated formulas and links in spreadsheet reports, which made it difficult to audit her calculations. (Id. ¶ 12). He also believed that a number of her calculations were inaccurate. (Id.). For instance, Mr. Fitzula found it particularly noteworthy that Tian had used a tax rate of 2,335% instead of 35% in certain of her calculations. (Id. & Ex. 1 thereto at 1-2). According to Mr. Fitzula, the plaintiff's tax rate was "blatantly wrong," and resulted in cumulative errors of $783,000. (Id.). Tian, on the other hand, insists that Mr. Fitzula's expectations of her were unreasonable, and that he sabotaged her ability to complete the work in a timely and accurate fashion by withholding critical information and guidance, refusing her requests for assistance, concealing financial data on his personal computer drive, and failing to warn her of errors so that she could make corrections. (See Pl. Mem. (Docket No. 47) at 11-15).

Because Mr. Fitzula concluded that Tian had not shown any material improvements since being placed on the PIP, he decided to terminate her employment with Aspen. (Fitzula Aff. ¶ 13). The decision was approved by Ms. Radzim and Mr. Fitzula's supervisor, Mr. Smith. (Radzim Aff. ¶ 9). Accordingly, on January 5, 2012, Tian was discharged for performance reasons. (Id. ¶ 10; DF ¶ 33). Tian does not contend that Mr. Fitzula or Ms. Radzim many any discriminatory comments to her in

-18-

connection with the termination or at any other time during the course of her employment at the company. (See DF ¶ 55; PR ¶ 55).

On March 12, 2012, Aspen hired a 26-year old Asian female to fill the position vacated by Tian. (PF ¶ 21; Pl. Ex. A at 88-89). Both Mr. Fitzula and Ms. Radzim took part in the decision to hire Tian's replacement. (DF ¶ 36).

The record shows that during the time period between 2006 and 2012, twenty-one individuals were terminated from Aspen's Financial Department in Burlington. (DR ¶ 23). It also shows that thirteen of those individuals, or approximately 62% of them, were 40 years old or above, and that 12, or approximately 57% of them, were female. (See id.). Again, however, neither party has provided information regarding the total number of employees in the Financial Department during that time period. Nor has either party described the age, gender or ethnic makeup of those employees. Accordingly, it is not possible to determine how many females and individuals 40 years of age or older remained employed in the Financial Department, and whether these numbers are statistically significant.

Tian contends that Aspen is responsible for derailing several job opportunities that she pursued after leaving the company because it objected to her employment with various companies that contacted Aspen for a reference. (PF ¶ 31(E)). However, the plaintiff has not pointed to any specific evidence that would substantiate this claim. (See id.). Nor has she presented any facts to undermine the sworn statements of Ms. Radzim and Mr. Fitzula, in which they asserted that since Tian left Aspen in January 2012, no

-19-

recruiters or potential employers have contacted the company to seek a reference for the plaintiff. (Radzim Aff. ¶ 14; Fitzula Aff. ¶ 16).

The plaintiff alleges that she has suffered both economic loss and psychological injury as a result of her termination, and she contends that she has been hospitalized and experienced adverse medical conditions as a consequence of Aspen's actions. (PF ¶ 32). Tian's medical records demonstrate that the plaintiff suffers from chronic headaches, and that she was admitted to Winchester Hospital in July 2012 after experiencing symptoms of likely food poisoning. (Pl. Ex. E at 1, 5-9). The records further indicate Tian has experienced symptoms of stress since filing this litigation in October 2012. (See id. at 2, 11).

Additional factual details relevant to this court's analysis are provided below where appropriate.

## III. ANALYSIS

### A. Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citations omitted). Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"
Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug,
Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity
to sway the outcome of the litigation under the applicable law." Id. (quotations, punctua-
tion and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-
moving party to set forth specific facts showing that there is a genuine, triable issue." PC
Interiors, Ltd., 794 F. Supp. 2d at 275. If that burden is met, the opposing party can
avoid summary judgment only by providing properly supported evidence of disputed
material facts that would require trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841
(1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation
or denials of his pleading,'" but must set forth specific facts showing that there is a
genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,
106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "Cross-motions for summary judgment
do not alter the basic Rule 56 standard, but rather simply require [the court] to determine
whether either of the parties deserves judgment as a matter of law on facts that are not
disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).
"'When facing cross-motions for summary judgment, a court must rule on each motion
independently, deciding in each instance whether the moving party has met its burden
under Rule 56.'" Ford v. Clarke, 746 F. Supp. 2d 273, 285 (D. Mass. 2010) (quoting Dan
Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass.

-21-

1991)). Applying this standard to the record in the instant case supports the conclusion that Aspen's motion for summary judgment should be allowed and that Tian's motion for summary judgment should be denied.

### B.    Aspen's Procedural Challenges to Tian's Motion

Aspen argues, as an initial matter, that the plaintiff's motion for summary judgment should be denied due to her failure to comply with the applicable rules. As described above, this court has rejected the defendant's assertion that Tian's failure to file an adequate statement of material facts or to authenticate her exhibits warrants the denial of her motion. Nevertheless, the defendant contends that such relief is appropriate because Tian did not comply with Local Rule 7.1. (Def. Opp. Mem. at 3-4). Although this court does not condone the plaintiff's failure to adhere to the requirements of the Local Rules, this court does not find that her procedural lapses warrant the summary denial of her motion.

Local Rule 7.1(A)(2) provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." In the instant case, Tian does not allege that she conferred with Aspen's counsel about the arguments raised in her motion for summary judgment. (See Pl. Reply Mem. (Docket No. 60) at 2). However, her failure to adhere to this requirement "does not *necessitate* summary denial" of her motion. Laporte v. Lab. Corp. of Am. Holdings, No. 13-12084-FDS, 2014 WL 2818591, at *7 (D. Mass. Jun. 20, 2014) (slip op.) (quoting Maloney v. Town of Hinsdale, 2012 WL 4103909, at *2 (D. Mass. Aug. 10, 2012))

(emphasis in original). Local Rule 7.1(A)(2) "is designed 'to encourage parties into narrowing the issues before bringing a dispute into court.'" Id. (quoting Charter Envtl., Inc. v. Shaw Envtl., Inc., 2009 WL 2982772, at *16 (D. Mass. Sep. 14, 2009)). Consequently, "where 'conferral between the parties . . . would have been unlikely to resolve or narrow the issues in contention and . . . [defendant] would have opposed the motion . . . in any event,' summary dismissal of the motion is inappropriate." Id. (quoting Charter Envtl., Inc., 2009 WL 2982772, at *16).

Here, there can be no serious dispute that Aspen would have opposed the plaintiff's motion even if Tian had conferred before filing it, and that there would have been little if any likelihood that the parties would have been able to narrow any of the issues that remain in dispute. Prior to the filing of their motions for summary judgment, the parties were asked to notify the court whether they would agree to participate in alternative dispute resolution programs. (See Docket Entry dated 11/08/2013). The parties did not agree to this option, and instead requested that the court set a deadline for filing dispositive motions. (Docket No. 44 at 2). The record also reveals that on February 19, 2014, two days before Tian filed her summary judgment motion, Aspen's counsel notified the plaintiff that "Aspen Tech plans to file a motion for summary judgment asking the court to dismiss your Complaint because Defendant believes there are no material facts in dispute and that it is entitled to judgment as a matter of law[,]" and asked Tian whether she would be "willing to agree to having judgment enter in Defendant's favor, based on the facts that came out in discovery[.]" (Pl. Reply Mem., Ex. B). Under such

circumstances, Aspen was certain to oppose Tian's motion for summary judgment, and any effort by Tian to confer prior to filing her motion had no likely prospect of narrowing the matters that are now before the court. Therefore, Tian's failure to comply with Local Rule 7.1(A)(2) does not support the denial of her motion.

This court also finds that Tian's motion should not be denied as a result of her failure to comply with Local Rule 7.1(B)(4). That Rule provides that "[m]emoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty (20) pages, double-spaced." Here, Tian did not seek leave of court before filing a 27-page memorandum that is less than double spaced. (See Pl. Mem.). Nevertheless, her memorandum is not so excessive as to prejudice Aspen, which has addressed all of the significant issues raised by the plaintiff in its own summary judgment papers. Further-more, "while a litigant's failure to observe the Local Rules [may] invite[] sanctions" a pro se plaintiff's failure to adhere to the applicable page and spacing limitations "does not warrant so severe a sanction as summary denial." Gerakaris v. Champagne, 913 F. Supp. 646, 651 (D. Mass. 1996). Accordingly, this court will proceed to address both parties' motions on the merits.

C. **Count I: Claims for Race, Gender and Age Discrimination**

In Count I of her complaint, Tian claims that Aspen violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), and Mass. Gen. Laws ch. 151B ("Chapter 151B") by discriminating against her on the basis of her age, race and gender. Specifically, Tian

alleges that in connection with her second period of employment at Aspen from 2010 to January 2012, the company subjected her to discriminatory hiring practices, treated her less favorably than her younger, non-Asian, and male co-workers, created a hostile working environment, and subjected her to unreasonable and unfair standards and disciplinary actions, including termination. (See Compl. (Docket No. 1) at Count I). Each of the parties argues that it is entitled to judgment as a matter of law on these claims. For the reasons that follow, this court recommends that summary judgment enter in favor of the defendant and against the plaintiff with respect to Count I of the complaint.

## Standard for Proving Discrimination

Where, as here, there is no evidence that any manager or employee of Aspen made any explicit reference to Tian's age, race or gender, and no direct evidence of discrimination, the court must apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2006) (applying McDonnell Douglas burden-shifting framework to plaintiff's claims of race discrimination brought under Title VII and Chapter 151B); Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55-56 (1st Cir. 2006) (applying McDonnell Douglas analysis to plaintiff's claims of age and gender discrimination brought under Title VII and the ADEA). Under the McDonnell Douglas analysis, the plaintiff "carries the initial

burden of establishing a *prima facie* case of discrimination." Benoit, 331 F.3d at 173.

This requires the plaintiff to establish that

> (1) he or she is a member of a protected class; (2) possessed the necessary qualifications and adequately performed his or her job; (3) was nevertheless dismissed or otherwise suffered an adverse employment action at the hand of his or her employer; and (4) his or her employer sought someone of roughly equivalent qualifications to perform substantially the same work.

Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46 (1st Cir. 2013). The First Circuit has emphasized that "[t]his 'prima facie showing is not especially burdensome, and once established, gives rise to a rebuttable presumption that the employer engaged in intentional . . . discrimination.'" Melendez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010) (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995)).

If the plaintiff is able to establish a prima facie case of discrimination, "the burden shifts to the defendant to rebut the presumption of discrimination by providing legitimate, non-discriminatory reasons for [its] action." Aly, 711 F.3d at 46. "The employer's obligation at this stage 'is one of production as opposed to persuasion, as the burden of persuasion remains with [the employee].'" Woodward v. Emulex Corp., 714 F.3d 632, 638 (1st Cir. 2013) (quoting Lewis v. City of Boston, 321 F.3d 207, 214 (1st Cir. 2003)) (alteration in original). "If the employer satisfies this step, the burden shifts back to the plaintiff, who 'must produce evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for actual discrimination.'" Id.

-26-

(quoting Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 686 N.E.2d 1303, 1309 (1997)). Thus, the "ultimate burden" of showing that the employer's actions were motivated by discrimination "lies with the plaintiff." Aly, 711 F.3d at 46.

### Tian's Ability to Establish a Prima Facie Case of Discrimination

To the extent Tian claims that Aspen discriminated against her during the hiring process that occurred in August 2010 by requiring her to complete an unusually large number of interviews and to submit more references than it required from younger men who were rehired by the company, this court finds that she cannot satisfy the requirements for establishing a prima facie case of discrimination. (See Pl. Mem. at 3-5). In order to succeed on her claim, Tian must establish, among other things, that she "suffered an adverse employment action at the hand of . . . her employer[.]" Aly, 711 F.3d at 46. "[A]dverse employment actions" encompass such adverse changes in employment as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." See Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). Here, there is no dispute that Aspen offered Tian a job and hired her from among 20 individuals who were selected to interview for the position of Senior Tax Analyst. (DF ¶¶ 12-13). It is also undisputed that those individuals included males, non-Asians and individuals who appeared to be under the age of 40. (DF ¶ 12). A reasonable factfinder could not conclude that she suffered any adverse action in connection with the hiring

process. Nor could a reasonable factfinder conclude that Aspen's conduct during that process supports an inference of discrimination.

With respect to Tian's claims relating to her placement on a PIP and her ultimate discharge from the company, this court finds that Tian has presented sufficient evidence to make a prima facie showing of discrimination. For purposes of these claims, Aspen does not dispute that Tian's status as an Asian woman over the age of 40 made her a member of a protected class for purposes of her claims for age, race and gender discrimination. (Def. Mem. (Docket No. 49) at 5). Nor does it challenge the fact that Tian was replaced by a person with "roughly equivalent qualifications to perform substantially the same work."[4] Aly, 711 F.3d at 46. However, Aspen argues that Tian cannot establish a prima facie case because she cannot show that she adequately performed her job. In order to support its position, Aspen points to Tian's acknowledgment that she had certain weaknesses in her job performance, and to her inability to meet Mr. Fitzula's expectations with respect to her work on the FIN 48 project and the tasks set forth in her PIP.

---

[4] Aspen argues, in a footnote, that Tian "cannot establish a *prima facie* case as to the fourth prong of her claims of discrimination with respect to race and gender, because she was replaced by an Asian female employee." (Def. Mem. at 5 n.3). However, "arguments raised only in a footnote or in a perfunctory manner are waived." Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999). Moreover, "[a] prima facie case requires only that the discharged employee be replaced by someone 'with roughly equivalent qualifications.'" Williams v. Raytheon Co., 45 F. Supp. 2d 124, 131 (D. Mass. 1999) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994)), aff'd, 220 F.3d 16 (1st Cir. 2000). See also Melendez, 622 F.3d at 50 (explaining that fourth prong of the prima facie case requires the plaintiff to establish "that the employer filled the position, thereby showing a continuing need for the services that [the plaintiff] had been rendering"). The fact that Tian was replaced by an employee of the same race and gender "does not necessarily defeat [her] sex [and race] discrimination claim[s]." Williams, 45 F. Supp. 2d at 131.

(Def. Mem. at 5-7). However, Aspen's arguments are more appropriately considered in connection with its articulation of a non-discriminatory reason for her termination and not at this preliminary stage of the analysis.

The First Circuit has held that a court "cannot 'consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case.'" Melendez, 622 F.3d at 51 (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003)). Thus, to consider Aspen's assessment of Tian's job performance in determining whether she had established a prima facie case would 'bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.'" Id. (quoting Wexler, 317 F.3d at 574). This is not appropriate under the law of this circuit. See id.

In order to show that she was qualified and was adequately performing her job as a Senior Tax Analyst, Tian relies on her 18 years of experience in the financial sector, including her prior experience at Aspen, as well as on her September 30, 2011 review in which Mr. Fitzula determined that, overall, she was consistently meeting the company's expectations. (See PF ¶¶ 4-5, 29; DR ¶ 5; DF ¶ 21; PR ¶ 21). In addition, Tian relies on evidence indicating that any inability to complete her work to Aspen's satisfaction was the result of Mr. Fitzula's actions, including but not limited to, his failure to point out errors in her work so that she could correct them, his failure to provide her with information necessary to complete her tax-related work, and his refusal to respond to her ques-

tions and requests for assistance. (See PF ¶ 26; Pl. Ex. B at 18-26). Thus, according to

Tian, any failure to meet her manager's expectations were due to reasons other than her

own shortcomings. "Mindful that an employee's burden at the *prima facie* stage is not

particularly onerous," this court finds that the evidence submitted by the plaintiff is

sufficient to establish that she was qualified for the position of Senior Tax Analyst and

adequately performed her job. Melendez, 622 F.3d at 51.

### Aspen's Reasons for Disciplining and Ultimately Discharging Tian

Once the plaintiff is able to establish a prima facie case of discrimination, the

court must determine whether the defendant employer has articulated a legitimate, non-

discriminatory reason for the adverse job action. Aly, 711 F.3d at 46. In the instant case,

Aspen claims that it placed Tian on a PIP and ultimately terminated her employment as a

result of her substandard work. (Def. Mem. at 7-8). To support its claim, Aspen has

presented evidence showing that Mr. Fitzula pointed out certain weakness and gaps in

Tian's work during her September 2011 review, including the need to improve her skills

in the area of international tax and to complete the FIN 48 calculations in a timely and

accurate manner. (DF ¶¶ 21-22; Pickett Aff., Ex. D at 2-3). It also relies on evidence

showing that Tian was unable to perform the FIN 48 calculations for the first quarter of

Aspen's 2012 fiscal year as she was required to do, and that she was unable to meet the

defendant's expectations as set forth in the PIP, even though she was warned that her

failure to do so could lead to her termination. (See DF ¶ 24; PR ¶ 24; Pickett Aff., Ex. F

at 1, 3; Fitzula Aff. ¶¶ 10, 12). This court finds that these facts are "enough 'to enable a

rational factfinder to conclude that there existed a nondiscriminatory reason'" for Aspen's

actions.  Melendez, 622 F.3d at 52 (quoting Ruiz v. Posadas de San Juan Assocs., 124

F.3d 243, 248 (1st Cir. 1997)).

## Pretext and Discriminatory Animus

"'Where, as here, the employer proffers a nondiscriminatory reason for its action,

the burden shifts back to the plaintiff to show that the reason was a coverup for a

discriminatory decision.'"  Benoit, 331 F.3d at 174 (quoting Straughn v. Delta Air Lines,

Inc., 250 F.3d 23, 34 (1st Cir. 2001)).  In order to meet her burden at this stage in the

McDonnell Douglas analysis, Tian "must demonstrate either that the adverse employment

action was (1) 'more likely motivated' by discrimination than by the explanation

proffered by the defendant; or (2) 'the proffered explanation [was] unworthy of credence'

where the suspect action, coupled with evidence to the contrary, suggests a discriminatory

motivation."  Aly, 711 F.3d at 46 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450

U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981)) (punctuation in original).

This court finds that Tian cannot make either showing.

In support of her assertion that Aspen's criticism of her performance was merely a

pretext for discrimination, Tian argues that the company's expectations, and the tasks she

was asked to complete as part of the PIP, were unfair and unreasonable.  Specifically,

Tian insists that Mr. Fitzula provided her with no guidance, instruction or support with

respect to the preparation of financial reports; concealed important information on his

personal computer; approved templates that she showed him part way through the work

-31-

process, but then disagreed with those templates when the reports were completed; failed to warn her about errors in her work that could have been corrected prior to the deadline for completion; and placed unreasonable time pressure on her by withholding necessary information. (Pl. Mem. at 11-15). As described above, it is undisputed that Tian raised these same issues in her written response to the PIP, and that Mr. Fitzula considered them, but did not agree with her criticism of his actions. (See Pickett Aff., Ex. G). Mr. Fitzula prepared a detailed written response to Tian (Pl. Ex. F at 26-27), to which Tian again responded, challenging again the merits of his assessments. (DF ¶ 26). Thus, the record establishes that even if Mr. Fizula's assessment of Tian's work was wrong or unfair, his actions were, in fact, based on his assessment of her performance.

In determining whether the plaintiff's evidence is sufficient to show that the employer's evaluation of her performance was a pretext for discrimination, the court is "not concerned with whether the stated purpose [for its actions] 'is unwise or unreasonable.'" Woodward, 714 F.3d at 639 (quoting DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993)). Nor is it concerned with whether the plaintiff's "dismissal was unjust or wrongful." Melendez, 622 F.3d at 52-53. Instead, Tian must show that Aspen's justification for its actions "is untruthful." Woodward, 714 F.3d at 639. Whether Mr. Fitzula impeded Tian's ability to succeed in her job or complete the requirements of the PIP, or whether he incorrectly evaluated the merits of her work, does not make Mr. Fitzula's decision to terminate her because, in his view, she failed to meet his standards, "untruthful."

Tian also attacks Aspen's conduct during discovery in an effort to establish pretext. For example, she argues that Aspen failed to provide her with relevant documents, including certain of her personnel records, copies of her reports, and emails that she had written when she was employed with the company. (Pl. Mem. at 15). She also accuses Aspen of concocting evidence to support its defenses in this case. (See id. at 16-17). Her arguments in this regard are not sufficient to raise a disputed issue of fact regarding the question of pretext.

Tian has not presented evidence that substantiates her claims that Aspen created false evidence or otherwise engaged in improper conduct. Moreover, to the extent Tian believed that Aspen's discovery was insufficient, she was free to, and in fact did, raise those issues earlier in a motion to compel. In any event, the discovery that Tian challenges relates to her assertions that Aspen's assessment of her work was incorrect, and that its treatment of her was unfair. As this court has emphasized, the issue for purposes of establishing pretext "is not whether reasonable jurors could find that [Aspen] lacked good cause to terminate [Tian] . . . but, rather, whether [Tian] made a substantial showing that the reason given for the termination was false." Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000). Additional evidence supporting Tian's claim that the defendant's actions were unreasonable and unjust would do nothing to assist her in making the requisite showing. See Melendez, 622 F.3d at 53 (the "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age" (quotations and citation

omitted)); Williams, 220 F.3d at 19 (the fact that plaintiff's supervisor "may have harbored hostility and treated [plaintiff] unfairly standing alone is not probative of gender based animus").

In another effort to establish pretext, Tian argues that she received disparate treatment during her second period of employment with Aspen, particularly in comparison with Mr. Fingliss, a 37 year-old male who also reported to Mr. Fitzula, and Ms. Cody, a white co-worker. (Pl. Mem. at 5-11). "Disparate treatment may be 'competent proof that the explanation given for the challenged employment action was pretextual, provided the plaintiff-employee can make a preliminary showing that others similarly situated . . . in all relevant respects were treated [more advantageously] by the employer.'" Aly, 711 F.3d at 46 (quoting Straughn, 250 F.3d at 43-44) (alterations in original). "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Woodward, 714 F.3d at 632 (quotation and citation omitted). [5] The undisputed facts do not support Tian's claim of disparate treatment.

---

[5] Because the plaintiff must compare her situation to that of others who are similarly situated in all relevant respects, Tian's assertion that Aspen treated her supervisor, Mr. Fitzula, better than it treated her cannot support her claim that the defendant engaged in disparate treatment. (See Pl. Mem. at 7-8).

Tian contends that Mr. Fitzula was "very friendly with Mr. Fingliss," but avoided ordinary communication with her and displayed an "apathetic attitude" toward her.[6] (Pl. Mem. at 5-6). She also argues that Mr. Fitzula gave Mr. Fingliss approval to attend a three-day out of state international tax seminar, but rejected Tian's request to attend a two-day seminar on the same topic. (Id. at 5). However, the record indicates that Mr. Fingliss was an International Tax manager at Aspen, which suggests that he was not similarly situated to the plaintiff and that there was justification for Mr. Fitzula's decision to approve his attendance at an international tax seminar while denying the same opportunity to Tian. (See PF ¶ 14; DR ¶ 14; Pickett Aff., Ex. A at 149). In addition, during her deposition, Tian testified that she did not know whether Mr. Fitzula's approach to Mr. Fingliss was the result of a friendship or whether it was related in any way to Mr. Fingliss' race and/or gender. (Pickett Aff., Ex. A at 148). More significantly,

---

[6] Tian asserts in a conclusory manner that Mr. Fitzula's attitude toward her created a hostile working environment. (See Pl. Mem. at 5-6). "A hostile work environment exists ... '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)). The First Circuit has warned that "the hostile work environment standard must be kept 'sufficiently demanding to ensure that Title VII does not become a general civility code.'" O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998)). Here, there is no evidence by which a finder of fact could reasonably conclude that Mr. Fitzula's "apathetic attitude" toward Tian and failure to engage her in ordinary conversation created a work environment that "[wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [Tian's] employment and create an abusive working environment." Fontanez-Nunez, 447 F.3d at 57 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002)).

there is nothing in the record to explain why Mr. Fitzula, who was instrumental in hiring Tian in August 2010, would develop an aversion to Asian women less than two years later. See Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job" (quotations and citation omitted)). Indeed, any suggestion that Mr. Fitzula's true motives were discriminatory is undermined by the fact that he participated in the decision to hire an Asian woman to replace Tian following her discharge from the company.[7] (PF ¶ 21; DF ¶ 36).

The plaintiff also accuses Aspen of treating her less favorably than it treated her white co-worker, Colleen Cody, who was laid off, and not "terminated" in 2011. According to Tian, Ms. Cody had allegedly been fired by several prior employers due to performance and behavioral issues, and caused "more serious problems while she was at Aspen." (Pl. Mem. at 9). However, the plaintiff has presented no admissible evidence to substantiate her allegations regarding Ms. Cody's work experience. (See PF ¶ 15; DR

---

[7] Tian claims that both Mr. Fitzula and Mr. Fingliss expressed surprise at the fact that she had a daughter in college. (See Pl. Mem. at 5; Pl. Ex. A at 20). To the extent Tian claims that this comment is suggestive of a discriminatory intent, this court disagrees. As an initial matter, the statement could easily have been intended as a compliment regarding Tian's youthful appearance, and it is too ambiguous to constitute evidence of ageism. In addition, the First Circuit has explained that "'stray workplace remarks,'... normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Melendez, 622 F.3d at 54 (quoting Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002)). Even if the remark is construed as a negative comment about Tian's age, Tian "has failed to adduce sufficient evidence for a reasonable trier of fact to conclude that the remark [was] both temporally and causally connected to [Aspen's] decision to discharge [her]." Id.

¶ 15; Pickett Aff., Ex. B at 67). Moreover, Ms. Cody was supervised by Mr. Walker rather than by Mr. Fitzula, and thus was not disciplined by the same supervisor. (DF ¶ 44; PR ¶ 44; Pickett Aff., Ex. A at 140). Finally, even if Ms. Cody's layoff could be viewed as more favorable than the discharge experienced by the plaintiff, it does not support an inference that Aspen's reasons for disciplining and firing Tian were merely a pretext to hide its discriminatory animus toward Asians.

On a more general level, Tian contends that Aspen implemented an "English only" rule that required employees to refrain from speaking any language other than English while on the job, carried out unfair disciplinary actions against two African American employees, gave "uneven . . . job assignments" to employees based on their race, and established higher promotional standards for minorities than for white employees. (Pl. Mem. at 6-9). Again, however, Tian has not provided sufficient evidentiary support for these allegations. Tian has not pointed to any specific facts to support her claims that Aspen discriminated against African American employees, provided employees with uneven job assignments based on their race, or set more rigorous standards for the promotion of non-white employees. Additionally, during her deposition, Tian testified that she was unaware of any official "English only" policy at Aspen, and admitted that she had "no idea" who declared that employees could only speak English while on the job. (Pickett Aff., Ex. A at 183-84). Moreover, Tian's arguments are belied by undis-puted evidence that Aspen promoted Asian employees to positions on its management team, and that about 75 of the management and professional positions at its Burlington

-37-

headquarters are filled by men and women of Asian or South Asian descent. (See DF ¶¶ 38, 42; PR ¶¶ 38, 42). They are further undermined by the fact that Aspen hired an Asian woman to fill Tian's position, and that both Mr. Fitzula and Ms. Radzim took part in that hiring decision. (PF ¶¶ 35-36; DF ¶ 21).

Finally, any reliance by the plaintiff on the fact that other women, non-whites and persons over age 40 were terminated or placed on a PIP is unpersuasive. As detailed above, neither party has submitted evidence describing the total number of employees in the Financial Department during those time periods or the makeup of that population in terms of their age, race and gender. Therefore, this court cannot determine whether the number of Asians, women, and individuals 40 years old or above who were presented with PIPs and/or discharged from employment was statistically significant, or whether Aspen had a pattern of disciplinary actions and terminations that disproportionately impacted one or more protected classes of individuals. Compare Bloomfield v. Bernardi Automall Trust, 170 F. Supp. 2d 36, 44-45 (D. Mass. 2001) (finding that plaintiff's statistical evidence was "arguably suggestive of discrimination" where it showed that "proportion of older to younger salespeople" employed at defendant's automobile dealership "changed significantly from November 1997 to December 1998[,]" that "in the period between June 1, 1997 and February 28, 1998, 9 of 10 salespeople hired were under 40" years of age, and that "salespeople over 40 who left [the business] were significantly less likely to have done so voluntarily than those under 40"). Furthermore, "[t]he First Circuit has pointed out that in a disparate treatment context, 'statistical

-38-

evidence . . . , in and of itself, rarely suffices to rebut an employer's legitimate, nondis-criminatory rationale for its decision to dismiss an individual employee.'" Id. at 45 (quoting LeBlanc, 6 F.3d at 848). Because Tian has not presented sufficient alternative evidence of pretext, any suggestion of discrimination that could arguably be gleaned from the statistical evidence is inadequate to rebut Aspen's explanation that its actions were motivated by Tian's work performance and failure to meet the requirements of her job. Therefore, this court recommends that Aspen's motion for summary judgment be allowed with respect to Count I of the complaint.

### D. Counts II and IV: Claims for Intentional Tort and Intentional Infliction of Emotional Distress

In Counts II and IV of her complaint, Tian is seeking to hold Aspen liable under state law for "intentional tort" and the intentional infliction of emotional distress. Thus, in Count II, Tian alleges that the defendant's discriminatory conduct against her gives rise to liability for "intentional tort," and in Count IV, Tian alleges that Aspen "intended to and did inflict emotional distress upon Plaintiff by engaging in actions that intended to insult, pressure, discipline, fire and damage the reputation of the Plaintiff." (Compl. ¶¶ 48, 56). The defendant argues that Count II cannot be sustained because it is nothing more than a restatement of Tian's discrimination claims. (Def. Mem. at 14-16). It further argues that both that claim and Tian's emotional distress claim are barred by the exclusivity provisions of the Workers' Compensation Act. (Id. at 19-20). This court

agrees that Tian is barred from pursuing these claims, and that Aspen is entitled to

judgment as a matter of law on Counts II and IV.

## Tian's Intentional Tort Claim

Mass. Gen. Laws ch. 151B provides a remedy for employment discrimination.

Where "a plaintiff alleges that a defendant's conduct violates both Chapter 151B and pre-

existing common law, the common law claims that are 'merely recast versions' of

allegations of employment discrimination are barred by Chapter 151B and must be

dismissed." Galletly v. Coventry Healthcare, Inc., 956 F. Supp. 2d 310, 314 (D. Mass.

2013) (quoting Green v. Wyman-Gordon Co., 422 Mass. 551, 557-58, 664 N.E.2d 808,

813 (1996)). That is the situation in this case with respect to Tian's claim for intentional

tort. In support of this claim, the plaintiff alleges the same facts on which she relies to

support her discrimination claims. (See Compl. ¶¶ 44-48). Therefore, Count II is barred

by the exclusivity provision of Chapter 151B.

## Exclusivity of the Workers' Compensation Act

This court also finds that due to the availability of the Workers' Compensation

Act, Tian cannot sustain her claim in Count IV for the intentional infliction of emotional

distress. Under Massachusetts law, "[c]ommon law actions are barred by the exclusivity

provision of the workers' compensation act where: 'the plaintiff is shown to be an

employee; his condition is shown to be a personal injury within the meaning of the

[workers'] compensation act; and the injury is shown to have arisen out of and in the

course of . . . employment.'" Green v. Wyman-Gordon Co., 422 Mass. 551, 558, 664

N.E.2d 808, 813 (1996) (quoting Foley v. Polaroid Corp., 381 Mass. 545, 548-49, 413

N.E.2d 711, 713-14 (1980)) (additional quotations and citation omitted).  Claims against

an employer for intentional infliction of emotional distress meet this test.  See id.

(affirming dismissal of plaintiff's claim against former employer for intentional infliction

of emotional distress arising out of alleged sexual harassment over a three-year period);

Brown v. Nutter, McClennan & Fish, 45 Mass. App. Ct. 212, 214-15, 696 N.E.2d 953,

955 (1998) (affirming dismissal of plaintiff's claim against her former employer for

intentional infliction of emotional distress based on exclusivity of Workers' Compensa-

tion Act).  Therefore, Aspen is entitled to summary judgment with respect to Count IV of

the complaint as well.

### E.    Count III: Claim of Unlawful Retaliation

Finally, Tian claims, in Count III of her complaint, that Aspen retaliated against

her, in violation of Title VII and the ADEA, for reporting and complaining about the

alleged disparate treatment she suffered while working as a Senior Tax Analyst at the

company.[8]  In particular, Tian alleges that the defendant's actions in placing her on the

PIP, and later dissuading potential employers from offering her a job after she had been

---

[8] Tian also alleges in Count III of her complaint that the defendant's retaliatory conduct
violated the Americans with Disabilities Act and the Genetic Information Non-Discrimination Act.
(Compl. ¶ 54).  The record does not include any facts that could possibly support a claim of
retaliation under either of those statutes, and Tian has not addressed those claims in her
opposition to Aspen's motion for summary judgment or anywhere else in her motion papers.
Therefore, any such claims have been waived.  See Perkins v. City of Attleboro, 969 F. Supp. 2d
158, 177 (D. Mass. 2013) (where plaintiff failed to address claim for violation of his right to
privacy in his opposition to defendant's motion, "any opposition to the dismissal of [that] claim
should be deemed waived").

fired from Aspen, were carried out in retaliation for her protected conduct, and were therefore unlawful under the federal discrimination statutes. (Compl. ¶¶ 50-54). This court finds that Tian has failed to present any factual basis for her retaliation claim.

Both Title VII and the ADEA contain provisions that make it unlawful for an employer to retaliate against an employee who complains about discriminatory employment practices. See Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (describing claim for retaliation under the ADEA); Benoit, 331 F.3d at 174-75 (describing claim for retaliation under Title VII). Where, as here, there is no direct evidence of retaliation, the court's analysis of a retaliation claim under either statute "closely tracks the *McDonnell Douglas* framework." Ramirez Rodriguez, 425 F.3d at 84. Thus, in order to make out a prima facie case of retaliation, the plaintiff "must show that (1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action after or contemporaneous with such activity; and (3) there existed a causal link between the protected activity and the adverse job action." Benoit, 331 F.3d at 175. See also Ramirez Rodriguez, 425 F. 3d at 84 (setting forth elements of a prima facie case of retaliation under the ADEA). This court finds that Tian has failed to establish a trial worthy issue as to the first and third elements of the analysis.

"An employee has engaged in activity protected by Title VII [or the ADEA] if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII [or the ADEA] or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII [or the ADEA]." Fantini v.

-42-

Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Long v. Eastfield Coll., 88

F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a))). See also 29 U.S.C.

§ 623(d). Accordingly, "'[t]he term 'protected activity' refers to action taken to protest or

oppose statutorily prohibited discrimination.'" Id. (quoting Cruz v. Coach Stores, Inc.,

202 F.3d 560, 566 (2d Cir. 2000)) (additional citations omitted). While the record in this

case shows that Tian complained to Mr. Smith and Ms. Radzim about Mr. Fitzula's unfair

treatment of her, and challenged Mr. Fitzula's behavior toward her in her written

comments to the PIP, the plaintiff has not presented any facts showing that she ever

complained of "discrimination," or that she ever accused Mr. Fitzula, or anyone else at

Aspen, of treating her unjustly on the basis of her age, race or gender. Therefore, she has

not shown that she engaged in "protected activity" while she was employed at Aspen, and

she cannot establish a link between such activity and the defendant's decision to place her

on the PIP and terminate her employment.

In her summary judgment motion, Tian nevertheless argues that she engaged in

"statutorily protected activities" on four separate occasions that were "linked to [her]

termination." (Pl. Mem. at 18). Specifically, she argues that she complained to Mr.

Walker about Aspen's request to provide it with an excessive number of references

during the hiring process, and informed him that the request was "unreasonable." (Id.).

She also argues that she complained to Ms. Radzim about a "misunderstanding" that

Mr. Smith had regarding her work relating to certain Canadian withholding tax refunds.

(Id.). Furthermore, Tian contends that she engaged in protected activity by challenging

the PIP and by complaining about Mr. Fitzula's "unfair" treatment. (Id. at 18-19). Even in her motion, however, Tian does not suggest that she ever characterized the challenged behavior as unlawful or discriminatory. See Fox v. Eagle Distrib. Co., 510 F.3d 587, 591-92 (6th Cir. 2007) (concluding that plaintiff did not engage in protected activity under the ADEA where plaintiff complained that management "was 'out to get him[,]'" but failed to reference any alleged acts of discrimination based on his age); Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII"). Therefore, she cannot support a prima facie showing of unlawful retaliation stemming from her complaints to her employer.

The record does contain evidence showing that Tian filed a charge of discrimination against Aspen with the EEOC. (See Pl. Ex. A at 8). While her administrative charge constitutes "protected activity" under Title VII and the ADEA, there is no indication that it was filed prior to Tian's termination from Aspen in January 2012. (See id.). Consequently, the plaintiff cannot show that the termination was causally linked to her complaints about discrimination.

To the extent Tian claims that Aspen engaged in unlawful retaliation by objecting to her potential employment with various companies that contacted Aspen for a reference, that claim too must fail. As described above, Tian has not cited any specific evidence in support of her contention that the defendant had communications with potential employers, much less said anything negative to them about the plaintiff. Nor has she

-44-

presented any facts to dispute the sworn statements of Ms. Radzim and Mr. Fitzula, in which they stated that no recruiters or potential employers have contacted Aspen in order to seek a reference regarding Tian since her discharge in January 2012. (See Radzim Aff. ¶ 14; Fitzula Aff. ¶ 16). Accordingly, there is nothing in the record to support such a claim.

Even if Tian were able to make out prima facie case of retaliation, she would not be able to withstand summary judgment in favor of the defendant. Under the McDonnell Douglas framework, "[i]f the plaintiff makes a prima facie showing of retaliation, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.'" Ramirez Rodriguez, 425 F.3d at 84 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)). "[I]f the defendant presents such a reason, 'the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation[.]'" Id. (quoting Mesnick, 950 F.2d at 827). Accordingly, "the 'critical inquiry [is] whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question.'" Id. at 85 (quoting Mesnick, 950 F.2d at 827) (alteration in original). Here, the evidence is not sufficient to raise a disputed issue for trial.

As described above with respect to Tian's discrimination claims, Aspen has articulated a legitimate, nondiscriminatory reason (i.e., Tian's substandard job performance) for placing the plaintiff on a PIP and terminating her employment with the company. Therefore, the burden falls to Tian to establish evidence of pretext. However, this court

finds that the plaintiff has presented no facts, and has advanced no arguments in her

pleadings, to establish that Aspen was masking a retaliatory intent. "[S]he has not, for

example, pointed to any 'comments by the employer which intimate a retaliatory mindset'

or demonstrated that [s]he was subjected to differential treatment" after complaining

about discrimination based on her age, race or gender. Id. at 86 (quoting Mesnick, 950

F.2d at 828). For this reason as well, Aspen is entitled to summary judgment on Count III

of Tian's complaint.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that the "Plaintiff's Motion For Summary Judgment" (Docket

No. 47) be DENIED, and that the "Defendant's Motion for Summary Judgment" (Docket

No. 48) be ALLOWED.[9]

___/ s / Judith Gail Dein_____

---

[9] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

Judith Gail Dein
U.S. Magistrate Judge